IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LAURA L. LUCKADUE                                                                                           PLAINTIFF

V.                              Case No. 4:23-CV-00770-BRW-BBM

MARTIN O'MALLEY, Commissioner,
Social Security Administration[1]                                                               DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.      INTRODUCTION**

On October 14, 2020, Plaintiff Laura L. Luckadue ("Luckadue") filed a Title II application with the Social Security Administration ("SSA") for a period of disability and disability insurance benefits. (Tr. at 17). On the same day, she filed a Title XVI application for supplemental security income. *Id*. In the applications, she alleged disability beginning

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner O'Malley is automatically substituted as the Defendant.

on January 1, 2019. *Id*. The applications were denied initially and on reconsideration. *Id*.; (Tr. at 71–168).

After a hearing, an Administrative Law Judge ("ALJ") denied Luckadue's application by written decision, dated September 30, 2022. (Tr. at 17–28). The Appeals Council denied Luckadue's request for review on June 22, 2023. (Tr. at 1–6). The ALJ's decision now stands as the final decision of the Commissioner, and Luckadue has requested judicial review.

For the reasons stated below, the Court recommends that the Commissioner's decision be affirmed.

## II.   THE COMMISSIONER'S DECISION

Luckadue was 48 years old on the alleged onset date of disability, and she has a limited education. (Tr. at 26). She meets the insured status requirements of the Social Security Act through December 31, 2026. (Tr. at 19).

The ALJ found that Luckadue engaged in substantial gainful activity during the following period: April 2021 through June 2021.[2] *Id*. However, there had been a continuous 12-month period during which Luckadue did not engage in substantial gainful activity. *Id*. Thus, the relevant time-period for determination of eligibility for benefits is January 1, 2019, (the alleged onset date), through September 30, 2022, (the date of the

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

ALJ's decision), excluding the period from April 2021 to June 2021. (Tr. at 28, 299).

At Step Two, the ALJ determined that Luckadue has the following severe impairments: degenerative disc disease of the cervical spine, obesity, bilateral carpal tunnel syndrome, depression, bipolar disorder, anxiety, and borderline personality disorder. (Tr. at 20–21). The ALJ determined at Step Three that Luckadue's impairments did not meet or equal a Listing.[3] (Tr. at 21–22). Before proceeding to Step Four, the ALJ determined that Luckadue had the residual functional capacity ("RFC") to perform work at the light exertional level, with restrictions: (1) can frequently handle bilaterally and frequently reach overhead bilaterally; (2) should avoid concentrated exposure to excessive vibration; (3) can make simple work-related decisions; (4) can maintain concentration, persistence, and pace for simple tasks; (5) can understand, carry out, and remember simple instructions and procedures; (6) can adapt to changes in the work setting which would be simple, predictable, and easily explained; and (7) can have occasional interaction with coworkers, supervisors, and the public. (Tr. at 23–26).

At Step Four, the ALJ found that Luckadue is unable to perform her past relevant work. (Tr. at 26). Relying upon the testimony of a Vocational Expert, the ALJ found, based on Luckadue's age, education, work experience, and RFC, that there are jobs in the national economy that Luckadue can perform, including positions, such as housekeeping cleaner

---

[3] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990) (internal citations omitted). That is, if an adult is not actually working, and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id.*

and mailroom clerk. (Tr. at 27–28). Therefore, the ALJ concluded that Luckadue was not disabled. *Id.*

### III. DISCUSSION

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

and mailroom clerk. (Tr. at 27–28). Therefore, the ALJ concluded that Luckadue was not disabled. *Id.*

### III. DISCUSSION

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Luckadue's Arguments on Appeal

Luckadue contends that the evidence supporting the ALJ's decision is less than substantial. Luckadue argues specifically that she met Listing 12.04 at Step Three and that the ALJ did not properly evaluate the opinion of one of her mental-health providers. The Court will address each argument, in turn.

#### 1. ALJ's Analysis at Step Three

Per medical records dated September 23, 2020, Luckadue was diagnosed with Generalized Anxiety Disorder (onset date April 6, 2016), Bipolar II Disorder (onset date April 14, 2016), and Insomnia Disorder (onset date June 18, 2019).[4] (Tr. at 487). Luckadue also received treatment for depression and borderline personality disorder. (Tr. at 24) (citing Tr. at 487, 873). However, her conditions were well-managed with medication, and her mental status examinations were often normal. (Tr. at 512–543, 574, 617–636, 653–657). She had some fatigue, low energy, and occasional suicidal thoughts. (Tr. at 666–669, 704–707, 747–751). But the ALJ pointed out that she was able to work for pay during the relevant time-period, and she could do a variety of daily activities. She said she could prepare simple meals, clean her house, shop in stores, visit with others, and drive. (Tr. at 22–25, 339–347, 378, 1313).

Nevertheless, Luckadue insists that she met Listing 12.04. Listing 12.04 of the Adult Listing of Impairments requires the following:

---

[4] Luckadue's arguments are solely related to her mental impairments, so the Court limits its discussion likewise. *See Noerper v. Saul*, 964 F.3d 738, 741 n.1 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

A. Medical documentation of the requirements of paragraph 1 or 2 below:

   1. Depressive disorder, characterized by five or more of the following:
      a. Depressed mood;
      b. Diminished interest in almost all activities;
      c. Appetite disturbance with change in weight;
      d. Sleep disturbance;
      e. Observable psychomotor agitation or retardation;
      f. Decreased energy;
      g. Feelings of guilt or worthlessness;
      h. Difficulty concentrating or thinking; or
      i. Thoughts of death or suicide.

   2. Bipolar disorder, characterized by three or more of the following:
      a. Pressured speech;
      b. Flight of ideas;
      c. Inflated self-esteem;
      d. Decreased need for sleep;
      e. Distractibility;
      f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
      g. Increase in goal-directed activity or psychomotor agitation.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
   1. Understand, remember, or apply information (see 12.00E1).
   2. Interact with others (see 12.00E2).
   3. Concentrate, persist, or maintain pace (see 12.00E3).
   4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
   1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
   2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P. App. 1, 12.04A.

At Step Three, the burden rests squarely on the claimant to prove she met a Listing. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). The claimant must show that her impairment matches all of the specified medical criteria of a Listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

Luckadue argues on appeal that she satisfied paragraphs "A and B" of Listing 12.04. (Doc. 10-1 at 4). In support of her argument, Luckadue claims she (1) suffers from a depressive disorder ("paragraph A") and (2) has marked limitation in identifying and solving problems and marked limitation in interacting with coworkers, her boss, and members of her family ("paragraph B"). *Id*. Luckadue does not challenge the ALJ's finding that she did not satisfy the "paragraph C" criteria. *Id*.

Luckadue's grossly normal mental-status examinations and improvement with treatment undermine her claim that she met Listing 12.04. To meet Listing 12.04, Luckadue must satisfy the criteria of "paragraph B" or "paragraph C." Luckadue satisfied neither. Again, to satisfy the "paragraph B" criteria, the mental impairments must result in *one* extreme limitation or *two* marked limitations in a broad area of functioning. 20 C.F.R. Pt. 404, Subpt. P. App. 1, 12.04A. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis; a marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. *Id*. Here, the ALJ thoroughly discussed Listing 12.04 in his opinion, giving good examples from the record for why Luckadue did not satisfy the "paragraph B"

criteria to meet the Listing. (Tr. at 21–22). Below, the Court recounts the ALJ's reasoning as to each limitation.

### a. Understanding, Remembering, or Applying Information

Luckadue claimed that her condition affected her memory, understanding, and ability to follow instructions. (Tr. at 21) (citing Tr. at 380). However, as to understanding, remembering, or applying information, the ALJ found that Luckadue had a mild limitation because, while "psychological consultative examiner, Cynthia W. Dupuis, Ph.D., noted that the claimant's IQ scores were extremely low," the examiner also stated that the "test scores were considered unreliable and invalid." (Tr. at 21) (citing Tr. at 465). Moreover, the ALJ observed that "treatment records noted that the claimant's intellect and fund of knowledge was low average, and that she denied any recent or remote memory problems[.]" *Id.* (citing Tr. at 565–566). Thus, according to the ALJ, "the evidence does not support more than a mild limitation in understanding, remembering, or applying information." *Id.*

### b. Interacting with Others

In interacting with others, the ALJ found that Luckadue had a moderate limitation. While Luckadue stated she had problems getting along with others due to anxiety, (Tr. at 380), her treatment records noted that she was still working at a school and "was getting

along with everyone[.]" (Tr. at 22) (citing Tr. at 817). Thus, according to the ALJ, "the evidence does not support more than a moderate limitation in interacting with others." *Id.*

### c.   Concentrating, Persisting, or Maintaining Pace

Regarding concentrating, persisting, and maintaining pace, the ALJ found that Luckadue had a moderate limitation. *Id*. As the ALJ noted, Luckadue reported that her conditions affected her concentration and ability to complete tasks. (Tr. at 22) (citing Tr. at 380). At some visits, however, providers noted that Luckadue was attentive, and, at other visits, providers noted that Luckadue was fidgety and impulsive. *Id.* (citing Tr. at 380, 812, 883, 1278–1281). Thus, according to the ALJ, "the evidence does not support more than a moderate limitation in concentrating, persisting, or maintaining pace." *Id.*

### d.   Adapting or Managing Oneself

As to adapting or managing oneself, the ALJ found that Luckadue had a mild limitation. *Id.* The ALJ based this finding, in part, on Luckadue's function report, wherein Luckadue stated that: (1) she does not need reminders to take her medicine; (2) she can prepare her own meals, such as frozen dinners, canned good foods, and sandwiches; (3) she can wash her clothes and clean house; (4) she can drive and go out alone; and (5) she shops in stores for food. *Id.* (citing Tr. at 377–378). The ALJ also noted that "treatment records noted that she was appropriately dressed and groomed." *Id.* (citing Tr. at 884). Altogether, according to the ALJ, "the evidence does not support more than a mild limitation in adaptation." *Id.*

In conclusion, the ALJ explicitly explained—with examples—why Luckadue did not meet the "paragraph B" criteria. It should be noted, however, that the ALJ's RFC

assessment reflected the degree of limitation the ALJ found in the "paragraph B" mental function analysis. (Tr. at 22). The ALJ did not err at Step Three.

### 2. ALJ's Evaluation of Dr. Haas's Medical Opinion

Luckadue also asserts that the ALJ should have given further consideration to the opinion of her treating psychiatrist, Dr. David Haas ("Dr. Haas"). Dr. Haas filled out a medical statement in June 2021, opining that Luckadue would have "severe issues regulating her mood and behavior and [has] a problem interacting with others and controlling her verbiage." (Tr. at 1216–1218).

On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. *See* 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c). An opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and it is consistent with other evidence in record." *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, at *1 (8th Cir. May 31, 2022) (unpublished per curiam) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No. 1:19-CV-00034-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020) (citations omitted).

10

Because Luckadue filed this application for benefits after the 2017 rule change, the new rules for evaluating medical opinions applies. Luckadue, however, argues her point under the framework of the old rules. (Doc. 10-1 at 8–9). Even if she had cited to the correct rules, her argument fails.

The ALJ considered Dr. Haas's opinion. (Tr. at 25). He found it to be unpersuasive, citing to Dr. Haas's own findings of generally normal mental status exams and normal psychiatric exams at other providers. (Tr. at 819–820, 878–879, 1285–1286). The ALJ noted Luckadue's ability to work with others for pay during the relevant time-period, and he noted that Dr. Haas's opinion was inconsistent with Luckadue's ability to perform a variety of daily activities, including driving independently, shopping, paying bills, living alone, and working with others. The ALJ appropriately considered and evaluated the medical opinion evidence from Dr. Haas.[5] The Court finds no legal error.

## IV. CONCLUSION

There is substantial evidence to support the Commissioner's decision that Luckadue was not disabled. The ALJ did not err at Step Three, and the ALJ properly assessed the medical opinion evidence.

IT IS THEREFORE RECOMMENDED:

1. That the Commissioner's decision be AFFIRMED.

2. That Judgment be entered for the Defendant.

---

[5] It is clear that the ALJ at least considered the opinion of Dr. Haas, along with the other record evidence, because he put several mental work-function restrictions in the RFC. (Tr. at 23).

DATED this 11th day of September, 2024.

*Benecia Moore*
UNITED STATES MAGISTRATE JUDGE